UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELL VERTNER,<br><br>         Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | Case No. 1:24-cv-00454-HBK<br><br>ORDER REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Doc. Nos. 12, 18) |

Angell Vertner ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 12, 18-19). For the reasons stated, the Court orders this matter remanded for further administrative proceedings.

## I.    JURISDICTION

Plaintiff filed for supplemental security income on July 20, 2021, alleging an onset date of

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

1  June 15, 2021.  (AR 231-40).  Benefits were denied initially (AR 73-88, 118-22), and upon
2  reconsideration (AR 89-105, 128-32).  Plaintiff appeared telephonically before an Administrative
3  Law Judge ("ALJ") on November 15, 2022.  (AR 35-72).  Plaintiff was represented by counsel
4  and testified at the hearing.  (*Id*.).  The ALJ issued an unfavorable decision (AR 15-34), and the
5  Appeals Council denied review (AR 1-6).  The matter is now before this Court pursuant to 42
6  U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 40 years old at the time of the hearing.  (*See* AR 245).  She completed one year of college.  (*See* AR 240).  She lives in a house with her family, including three children ages 19, 17, and 4 at the time of the hearing.  (AR 50-51).  Plaintiff has no past relevant work history.  (AR 43).  Plaintiff testified the medical conditions that prevent her from working include lupus, back pain, hearing difficulties, and difficulty using her hands.  (AR 45-49).  She reported she can walk for two hours before she needs to sit down, stand for 45 minutes before she needs to sit down for 30 minutes, she cannot lift anything heavier than a glass of water, and she can only use her hands for 20 minutes at a time.  (AR 55, 59).  Plaintiff testified that she has memory problems and headaches three times a month that last for three days at a time.  (AR 57-59).  She reported that in an average 8-hour day she spends 2 hours sitting, 2 hours on her feet, and 4 hours lying down.  (AR 62).

## III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20

C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 20, 2021, the application date. (AR 20). At step two, the ALJ found that Plaintiff has the following severe impairments: systemic lupus erythematous, degenerative joint disease, and obesity. (AR 20). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 23). The ALJ then found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except the claimant is capable of frequent ramp or stair climbing; frequent balancing, stooping, crouching, crawling, and kneeling; frequent handling or fingering; and occasional climbing of ladders, ropes, or scaffolds.

(AR 24). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 28). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including checker I, marker, and router. (AR 29). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 20, 2021, the date the application was filed. (AR 29).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff identifies these issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;
2. Whether the ALJ properly evaluated the severity and limiting effects of Plaintiff's migraine headaches and sensorineural hearing loss; and

5

3. Whether the ALJ adequately accounted for the exacerbating impact of Plaintiff's morbid obesity.

(Doc. No. 12 at 11-24).

## VII.   DISCUSSION

### A.   Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the

6

1  medical evidence and other evidence in the record for the reasons explained in this decision.
2  Accordingly, these statements have been found to affect the claimant's ability to work only to the
3  extent they can reasonably be accepted as consistent with the objective medical and other
4  evidence." (AR 25). Plaintiff argues the ALJ failed to provide specific, clear, and convincing
5  reasons for discounting her allegations of pain and physical dysfunction. (Doc. No. 12 at 11-19).
6  The Court agrees.

7  First, the ALJ found that diagnostic testing during the adjudicatory period "fail[ed] to
8  demonstrate debilitating abnormalities and specifically fail to identify disc or joint instability,
9  severe degeneration, or severe impingement," and "[c]linical findings across her pain
10  management, internal medicine, and rheumatology appointments have been generally mild to
11  moderate in nature, with unassisted gait, generally intact strength, and universally normal
12  sensation, with persistent spinal and poly joint tenderness and somewhat reduced spinal range of
13  motion." (AR 25, 27). The medical evidence is a relevant factor in determining the severity of a
14  claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001);
15  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not "cherry-pick" aspects of
16  the medical record and focus only on those aspects that fail to support a finding of disability. *See*
17  *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Plaintiff argues the ALJ provided "an
18  incomplete and one-sided description of the clinical findings," and contends the examination
19  results and objective testing provided the requisite support for Plaintiff's allegations of pain.
20  (Doc. No. 12 at 13-14). In support of this finding, Plaintiff cited her consistent reports of pain;
21  examination findings of diffuse muscle tender points, limited range of motion, tenderness to her
22  paraspinal muscles, reduced hip strength, and antalgic gait; and imaging of Plaintiff's SI joints
23  showing sclerosis with subchondral cystic changes in SI joints likely secondary to underlying
24  degenerative change of bilateral SI joints or chronic sacroiliitis. (*Id.* (citing AR 304, 310, 323,
25  332, 372, 396, 408, 843, 849-50, 857-58, 863-64, 905, 915, 917, 930)).

26  Defendant responds that the ALJ did not "disregard evidence" of positive clinical signs,
27  rather, "in the context of the longitudinal record, the ALJ found Plaintiff's clinical signs and
28  diagnostic laboratory test results, while consistent with finding Plaintiff had some ongoing

7

symptoms, supported only a limitation to a range of light exertional work." (Doc. No. 18 at 11-12). However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed below, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were largely not supported by substantial evidence.

Second, the ALJ generally found, without citation to the record, that Plaintiff's "at least partially successful, generally conservative, treatment history is inconsistent with disabling conditions." (AR 27 ("The claimant has not received the type of medical treatment one would expect for a disabled individual.")). Evidence of "conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed). In addition, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). As an initial matter, the parties argue whether Plaintiff's treatment with pain medication, steroid medication, and epidural injections can "accurately be characterized as conservative." (Doc. No. 12 at 15-16 (citing *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (noting "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated," and finding the ALJ failed to explain why he deemed epidural injections, steroid injections, and prescribed pain medications to be "conservative" treatment for fibromyalgia); Doc. No. 18 at 15-16). Regardless, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes

8

are available." *Block v. Berryhill*, 2018 WL 1567814, at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)); *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010) (holding ALJ erred in relying on conservative treatment if "the record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."). Thus, an ALJ errs in rejecting subjective complaints on these grounds if he "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *See Candice C. v Saul*, 2019 WL 5865610, at *4 (C.D. Cal. Nov. 8, 2019). Defendant does not cite, nor does the Court discern, any notation in the record that Plaintiff was receiving conservative care, nor does the ALJ explain why the treatment Plaintiff was receiving was "generally conservative" or what more aggressive treatment was available.

Moreover, symptom improvement should be considered within the context of the "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person ... makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Here, the ALJ cites Plaintiff's reports in August and September 2021 that oral steroids provided "significant improvement of diffuse joint pains" (AR 26, 375, 406); general treatment notes that Plaintiff was prescribed over-the-counter pain medication without any notation of improvement (AR 27, 317, 330 (noting 7/10 pain in hip and back), 342 ("still having a lot of problems with hips and back")); a single report one year previous to her alleged onset date that she was using a back brace at work "which helps," but at the same time reporting low back and hip pain that radiates down both legs (AR 27, 309 ("states she has been struggling with the physical demand of work")); one instance of improvement with physical therapy (AR 27, 349 (noting she "likes the therapy" but also "more issues with left side back and hip"), 489)); and reported partial relief from a bilateral steroid injection in 2022 (AR 26, 844 (prescribing TENS unit and back brace to decrease pain *after* the cited "improvement")). The ALJ also noted that Plaintiff's headaches were "well-managed," and her hearing loss was "successfully address[ed] with amplification aides." (AR 27). However, the same records cited

by the ALJ include consistent evidence in support of Plaintiff's ongoing symptom claims; thus, as noted by Plaintiff, "while Plaintiff received some transient benefit from treatment modalities, her pain and physical dysfunction persisted throughout the adjudicated period." (Doc. No. 12 at 16-17). Of particular note here in light of Plaintiff's argument regarding an error in considering Plaintiff's reported headaches and hearing loss, the Court's review of the records cited by the ALJ do not contain any observation that Plaintiff's symptoms were "well-managed" or "successfully addressed"; rather, the cited records outline Plaintiff's subjective complaints without reference to any successful treatment. (AR 27 (citing AR 309, 389 (reporting sudden hearing loss, pressure, and pain), 824 (diagnosis of sensorineural hearing loss, unilateral, right ear, with unrestricted hearing on the contralateral side), 831 (hearing test completed), 869 (noting neurological referral for migraines), 898 (noting "MRI head normal" but also reporting nausea and blurry vision during daily headaches), 918 (noting encounter diagnosis as "migraine without status migrainosus, not intractable, unspecified migraine type"), 921-22 (MRI results including "equivocal punctate focus of FLAIR hyperintensity involving the left frontal white matter may be related to migraines"), 935 (following up on hearing loss to both ears, pain unchanged),   For all of these reasons, the ALJ's general finding that Plaintiff's "partially successful, generally conservative" treatment history was inconsistent with "disabling conditions" was not a clear, convincing, and specific reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

Third, the ALJ noted Plaintiff failed to complete a full course of physical therapy treatment in April 2021 and was "discharged for non-compliance after attending just four sessions." (AR 27, 489). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for rejection of Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, the ALJ's reliance on a single instance of non-compliance prior to the alleged onset date of disability does not rise to the level of substantial evidence in support of this reasoning, particularly in light of Plaintiff's ongoing treatment for her claimed impairments

10

during the relevant adjudicatory period.[2] (*See, e.g.,* AR 908 (noting Plaintiff was compliant with medication); *A.M.H. v. Saul*, 2019 WL 11795561, at *8 (Dec. 5, 2019) (the ALJ's reliance on non-compliance "selectively relies on only one note of non-compliance and ignores Plaintiff's longitudinal treatment records demonstrating 'good' medical compliance"); *Catriona B. v. Comm'r Soc. Sec. Admin.*, 2024 WL 1193003, at *4 (D. Or. Mar. 20, 2024) ("With only a single instance of noncompliance due to a one-month delay in treatment, and subsequent consistent treatment afterwards, the ALJ's finding is not supported by substantial evidence, is not a reasonable interpretation of the record, and therefore, not a clear and convincing reason for discounting plaintiff's subjective symptom testimony.").

Fourth, the ALJ found Plaintiff's daily activities are consistent with the assessed RFC. (AR 27). Plaintiff argues the ALJ provided an "incomplete and misleading description of Plaintiff's activities" and failed to explain how the activities were inconsistent with Plaintiff's alleged limitations. (Doc. No. 12 at 17-18). The Court agrees. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way

---

[2] Defendant also contends that "many of Plaintiff's symptoms were tied directly to her morbid obesity," and appears to argue that Plaintiff was noncompliant with recommendations to diet, exercise, and lose weight. (Doc. No. 18 at 9). As an initial matter, it is well-settled in the Ninth Circuit that ALJ's are precluded from discounting a claimant's symptom testimony based on a failure to lose weight unless weight loss is "prescribed by a treating source, … not simply recommended." SSR 02-1p, 2002 WL 34686281, at *9 (Sept. 12, 2002) ("We will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits."). Moreover, the Court declines to consider this "reason" as it was not offered by the ALJ in the decision to discount Plaintiff's symptom claims. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

1  detract from her [testimony] as to her overall disability.").

2  Here, in support of this finding, the ALJ generally notes, without citation to the record, that Plaintiff is the primary caregiver to her children and drives locally. (AR 27); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (plaintiff's ability to care for young children *without help* may undermine claims of totally disabling pain); *but see Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) ("the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations."). However, the ALJ did not consider Plaintiff's testimony that she relied on her 19- and 17-year-old children to complete daily activities, drives her 4-year-old 10 minutes to school occasionally, and drives to the grocery store once every two weeks. (AR 50-54). The ALJ cited no evidence suggesting that the limited activities cited in the decision were performed by Plaintiff in a manner transferable to a work setting, particularly regarding Plaintiff's difficulty standing, walking, and lifting, nor did the ALJ describe activities that contradict Plaintiff's reported symptom claims. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Furthermore, in considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he or she finds not to be credible, and the evidence that allegedly undermines those statements. *Holohan*, 246 F.3d at 1208. "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."). Here, the ALJ did not identify the specific testimony that he found not to be credible, nor did he offer explanations for why the cited evidence of Plaintiff's ability to perform basic activities of daily living for limited periods of time undermines Plaintiff's symptom claims. For example, the ALJ did not explain how Plaintiff's reports that she could drive short distances and make simple meals for her son conflicted with her

testimony as outlined above. Thus, the ALJ's finding that Plaintiff's daily activities were inconsistent with her claimed limitations was not a clear and convincing reason, supported by substantial evidence, to discount her symptom claims

Fifth, the ALJ found Plaintiff's "poor work history, which predates the claimant's reported onset of disability, and appears unrelated to any medically determinable impairments, does little to support assertions that the claimant's symptoms are disabling." (AR 27). In support of this finding, the ALJ cited Plaintiff's low earnings between 1997 and 2022. (*Id*.). Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work. *Thomas*, 278 F.3d at 959; 20 C.F.R. §§ 404.1529, 416.929 (prior work record can be considered in assessing credibility). However, "before discounting the claimant's reported symptoms due to a poor work history, the ALJ is to consider other factors that could have contributed to the poor work history." *Suzanne M. v. Saul*, 2020 WL 13931887, at *7 (E.D. Wash. Apr. 6, 2020) (listing factors including transportation and childcare); *see also Rangel v. Colvin*, 2013 WL 3456975, at *7 (E.D. Cal. July 9, 2013) ("Though the Court has no criticism of the ALJ for considering Plaintiff's poor work history, the ALJ fails to explain why this factor necessarily demonstrates a lack in candor as to whether [plaintiff] suffers from a medical condition which precludes work."). Here, it does not appear the ALJ considered possible reasons for her poor work history, including, as acknowledged by the ALJ, her role as primary caregiver. (Doc. No. 19 at 4; *see also* AR 841 (listing occupation as homemaker), 847 (same), 855 (same)). Regardless, when viewing the record as a whole, this reasoning does not rise to the level of a clear and convincing reason, supported by substantial evidence, to wholly discount Plaintiff's symptom claims.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Additional Assignments of Error**

Plaintiff also argues the ALJ erred in considering the severity and limiting effects of Plaintiff's migraine headaches and sensorineural hearing loss, and the exacerbating impact of

Plaintiff's obesity. (Doc. No. 12 at 19-24). Because the ALJ's consideration of these issues is dependent on a reevaluation of Plaintiff's symptom claims, including a review of the medical evidence as it relates to Plaintiff's subjective complaints, the Court declines to address this challenge in detail here. However, the Court is constrained to note that, as discussed above, the ALJ's finding that Plaintiff's headaches and hearing loss were not accommodated in the assessed RFC because they were "well-managed" and "successfully addressed" was not supported by substantial evidence. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims, including headaches and hearing loss, and conduct a new sequential analysis, including a reassessment of the medical opinion evidence, if necessary.

### C. Remedy

Plaintiff contends that the proper remedy in this case is a remand for further administrative proceedings. (Doc. No. 12 at 25); *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). The Court agrees. Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's symptom claims, as well as all relevant medical evidence, including medical opinions. The ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 12) is GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 18) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the

Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion within thirty (30) days.

5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:  May 9, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE